IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DAYVON GRANT, | : | |
| Plaintiff, | : : | |
| v. | : : | Case No. 5:22-cv-00396-MTT-MSH |
| TIMOTHY WARD, *et al*., | : : | |
| Defendants. | : : : | |

## ORDER AND RECOMMENDATION

This case is currently before the United States Magistrate Judge for screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). *Pro se* Plaintiff Dayvon Grant, a prisoner at the Hays State Prison in Trion, Georgia, filed a 42 U.S.C. § 1983 complaint regarding his previous incarceration at Hancock State Prison in Sparta, Georgia. ECF No. 1. Plaintiff also filed an incomplete motion for leave to proceed *in forma pauperis*. ECF No. 2. On December 6, 2022, the Court ordered Plaintiff to submit the statutorily required account statement in support of his motion for leave to proceed *in forma pauperis* or pay the full filing fee. ECF No. 4. Plaintiff has now submitted his certified inmate account statement. ECF No. 6. Plaintiff's motions for leave to proceed *in forma pauperis* (ECF Nos. 2 and 6) are **GRANTED** as set forth below. This complaint is now ripe for preliminary review. Upon such review, Plaintiff's Eighth Amendment claim for failure to protect shall proceed against Defendants Toby, Hill, Washington, and Redd for further factual development. However, it is **RECOMMENDED** that Plaintiff's claims as to Defendants Ward, Ivy, and Wilson be

**DISMISSED** without prejudice for failure to state a claim.

### MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). ECF Nos. 2 and 6. As it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* is hereby **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

    III.    <u>Directions to Plaintiff's Custodian</u>

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the facility where

Plaintiff is housed. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

IV.   Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the

provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I. Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks

omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II. <u>Plaintiff's Allegations</u>

Plaintiff's claims arise from his previous incarceration at Hancock State Prison. ECF No. 1-1 at 4. Plaintiff states that he was housed in F-1 dorm upon his transfer into Hancock State Prison. *Id.* at 5-6. However, Plaintiff complains that on September 23,

2020, he was labeled as "pre-aggressive" and was transferred into the "notoriously violent E-1 dorm … without explanation". *Id.* Plaintiff alleges that "between 9/23/20 and 11/6/20, there were more than 11 stabbings in E-1 dorm" and he lists the names of inmates who were killed between 2017 and 2021. *Id*. He further alleges that despite these numerous assaults, the dorm remained understaffed and that inmates continuously hung blankets, sheets, and clothing on the railings that obstructed the view of security cameras and "control room officers, if one was assigned". *Id*. at 4-5.

Plaintiff claims that "[o]n October 2, 2020, [he] wrote a letter to Def. Hill explaining [Plaintiff] was not comfortable and feared for [his] safety in E-1, due to the ongoing violence". *Id.* at 6. He claims that he also wrote Defendant Unit Manager Washington a letter on October 6th stating that he "had not done anything to be labeled preaggressive and did not feel safe in E-1 due to the constant stabbings in the dorm". *Id*. at 6 and 9. Plaintiff avers that also in October 2022, he personally talked to Defendant Warden Toby about the stabbings in E-1 dorm and that he did not feel safe. *Id*. at 9. Plaintiff complains that he received no responses from Defendants Toby, Hill, or Washington as to the communications with them about his safety concerns. *Id*. at 6 and 9.

On November 6, 2020, Plaintiff states that several inmates entered his cell and stabbed him multiple times leaving him to die. *Id.* He complains that on this day, "E-1, as usual, had blankets and sheets hanging on railings, blocking any view by an officer/ security cameras". *Id*. at 7. He further alleges that Defendant Officer Redd "was assigned to E-1 control" and that "no officer was assigned to E-1 dorm". *Id*. at 6.

Plaintiff complains that "Def. Redd fail to conduct security checks in E-1 during their shift, instead, Def. Redd did abandon the post and hung out in other dorm controls for hours". *Id*. at 6-7.

Lastly Plaintiff alleges that Defendants Ward, Toby, Hill, Ivy, and Redd have created a "bloodsport through ill intents" to encourage inmates to stab one another so that they can "deter their attention from the severe lack of security at Hancock State Prison". *Id*. at 10.   Plaintiff states that these Defendants have communicated with one another about this bloodsport scheme through "text, fax, and email" and have supported this scheme through their disciplinary procedures, "failure to investigate", and "creating unsafe conditions through arbitrarily labeling {plaintiff] preaggressive and housing all violent offenders in E-1, with short periods of lockup after they've stabbed another".   *Id*. at 10-11.   Plaintiff seeks damages.   *Id*. at 12-13.

V.     Plaintiff's Claims

Conspiracy claims

Plaintiff appears to be raising a claim that Defendants Ward, Toby, Hill, Ivy, and Redd are part of a large conspiracy to have prison inmates assault one another.   However, "[a]llegations of conspiracy must be specific and based upon facts rather than conclusions." *Van Bethel v. Carter*, No. 5:12–cv–01153, 2012 WL 5932682 at *2, (N.D. Ala. Oct. 12, 2012).   Here, Plaintiff unintelligibly postulates that:

> "Def Ward, Toby, Hill, and Ivey actions and omissions in creating and practicing a Bloodsport through ill intents to encourage/ promote offenders

in the stabbing of one another to deter their attention from the severe lack of security at Hancock State Prison by failing to mention weapons/injurys in disciplinary reports; covering up stabbings through their failure to investigate; creating unsafe conditions through arbitrarily labeling [Plaintiff] as preaggressive and housing all violent offenders in E-1, with short periods of lockup after they've stabbed another- constitutes deliberate indifference to [Plaintiff's] health and safety in violation of the Eighth Amendment to the U.S. const., by text, fax, and email".

ECF No. 1-1 at 11.

Plaintiff then later restates that "Def's. Toby Hill, Ivey, Redd through their acts and omissions in their ill practice of a bloodsport that encourage violence". *Id*. Plaintiff's bald assertion as to a conspiracy among the Defendants to create and condone a "bloodsport" is no more than a word salad of legalese void of any definitive factual allegations. Simply put, they are vague, conclusory, and not enough to state a claim. *See Iqbal*, 556 U.S. at 663 ("Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."). While a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." *Twombly,* 550 U.S. at 555-6 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Specifically, as to conspiracy claims, "[i]t is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (citations omitted). To state a conspiracy claim under § 1983, a plaintiff must (1) "show that the parties reached an understanding to deny the

plaintiff his or her rights" and (2) "prove an actionable wrong to support the conspiracy." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty, Fla.*, 956 F.2d 1112, 1122 (11th Cir.1992) (internal quotation marks and citation omitted). Plaintiff's complaint fails to adequately allege either element.

Plaintiff concludes that these Defendants desire that inmates stab one another as a "bloodsport" and that they communicate this desire "by text, fax, and email" in order to "coverup" understaffing. See ECF No. 1-1 at 11. He, however, greatly fails to mention any such "text, fax, and email" that he has personally seen where these Defendants have shared their grand scheme of "creating and practicing a Bloodsport through ill intents to encourage/ promote offenders in the stabbing of one another". *See* ECF No. 1-1 at 11. Thus, this Court is under no obligation to grant credence to Plaintiff's derisive assertions. *See Iqbal*, 556 U.S. at 679 (holding that pleadings containing no more than conclusions are not entitled to an assumption of truth).

Although the Court must liberally construe Plaintiff's complaint, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *Fullman*, 739 F.2d at 556-7(citations omitted) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."). Plaintiff's claims of a vast conspiracy to violate his Eight amendment rights is speculative at best and is thus subject to dismissal. *See Grider v. Cook*, 590 F. App'x 876, 881 (11th Cir. 2014) (per curiam) (plaintiff failed to state a conspiracy claim

where he made only "threadbare recitals of the agreement element of conspiracy" and failed to identify "even generally" any "date, time, or location" where the agreement occurred).

Respondent Superior claims

The Plaintiff goes to great lengths to describe the "responsibilities" of most of the Defendants based on their positions as Commissioner of the Georgia Department of Corrections, Warden, Deputy Wardens, Unit Manager, and Sergeant. ECF No. 1-1 at 2-3, 8. Thus, it appears that Plaintiff is, in part, centering his Eighth Amendment claim against Defendants Ward, Toby, Ivy, Hill, Washington, and Wilson on their supervisory positions. However, if Plaintiff's theory of liability for his claims against these Defendants is based upon their supervisory roles, then Plaintiff has failed to state a claim.

Supervisors within a prison are liable under § 1983 only if they personally participate in the constitutional violation, direct their subordinates to act unlawfully, or know their subordinates will act unlawfully but fail to stop them. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010); s*ee also Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005). Stated another way, a prisoner must allege facts showing either that a supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation to state a claim against a prison official based solely on their supervisory position. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003). Here, Plaintiff gives no factual

basis for any claim against of these Defendants in their supervisory roles beyond conjecture. Thus, any claim against the Defendants based upon supervisory positions is subject to dismissal.

<u>Any claim as to Defendant Wilson</u>

Other than listing him as a Defendant, Plaintiff only mentions Defendant Wilson twice in his complaint. First, he states that Defendant Wilson is a Sergeant and as such, he is "responsible for security checks, manning their posts, taking corrective actions, offender safety – amongst other things". ECF No. 1-1 at 3. The second mention of Defendant Wilson is when Plaintiff is describing the events immediately after being stabbed. *Id*. at 8. Plaintiff states that he witnessed Defendant Wilson, along with Defendant Hill, pulling another inmate out of his cell that had also been stabbed. *Id*. Plaintiff then. without providing any context or specificity, states that Defendants Redd, Hill, and Wilson told the Plaintiff they were made aware of the stabbings by a "concerned parent" who had called the prison after receiving a call from her son. *Id*. Nothing within these allegations as to Defendant Wilson suggest any constitutional violation committed by this Defendant. "[A] complaint must contain either direct or inferential allegations" from which the court can identify the "material elements necessary to sustain a recovery under some viable legal theory." *Green v. Sec'y, Fla. Dep't of Corr*., 618 F. App'x 655, 656 (11th Cir. 2015) (quoting *Snow v. DirecTV, Inc*., 450 F.3d 1314, 1320 (11th Cir. 2006). Here, Plaintiff has only alleged that Defendant Wilson is a Sergeant and that Defendant Wilson received a call from some unnamed witness that violence had occurred in the dorm.

These allegations fail to support any § 1983 claim that Plaintiff may be attempting to raise as to this Defendant.

<u>Failure to protect claim</u>

Plaintiff's states that he is seeking "damages under 42 U.S.C. § 1983 alleging a 'failure to protect' … in violation of the Eighth (8th) Amendment to the United States Constitution". ECF No. 1-1 at 1.

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir.2003) (internal quotation marks omitted). To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).

*Substantial risk of serious harm*

In the jail setting, a risk of harm to some degree always exists by the nature of it being a jail. *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga,* 400 F.3d 1313, 1323 (11th Cir. 2005). Successful failure to protect claims will generally require some further

reason—beyond a plaintiff feeling threatened by his incarceration with other offenders convicted of violent and/or gang-related offenses—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility of serious harm. *See Marbury*, 936 F.3d at 1236; *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.1990) ("The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." (internal citations and quotations omitted)). Moreover, the risk must be specific and imminent; "a generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement." *Carter*, 352 F.3d at 1350.

An inmate can meet the burden of showing a substantial risk of serious harm by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Marbury*, 936 F.3d at 1235-6 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)).

Here, Plaintiff has alleged that from 2019 and 2020, inmate assaults were common in the E-1 dorm at Hancock State Prison. ECF No. 1-1 at 4-6. Specifically, he alleges that "between 9/23/20 and 11/6/20, there were more than 11 stabbings in E-1 dorm" and he lists the names of inmates who were killed between 2017 and 2021. *Id*. at 5-6. He further alleges that despite these numerous assaults, the dorm remained understaffed and

that inmates continuously hung blankets, sheets, and clothing on the railings that obstructed the view of security cameras and "control room officers, if one was assigned". *Id*. at 4-5. Lastly, he alleges that he advised prison officials on several occasions about the ongoing violence in the dorm and that he feared for his safety prior to his assault at the hands of other inmates. *Id*. at 6 and 9. The Court finds that Plaintiff's allegations suggest that Plaintiff was at risk for substantial harm.

### *Deliberate indifference*

The subjective component of Plaintiff's Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). A Defendant must be found to have acted with deliberate indifference to an inmate's safety. *Carter*, 352 F.3d at 1349. In defining "deliberate indifference," the Supreme Court stated:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. *See e.g.*, *LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA11 1993).... It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Brennan*, 511 U.S. at 836.

Thus, the Supreme Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. *Id.* at 839-40. Under this test, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not ...." *Id.* at 838. "[M]erely

14

negligent failure to protect an inmate from attack does not justify liability under section 1983." *Hughes*, 894 F.2d at 1537. It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). To be deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Brennan*, 511 U.S. at 837 (emphasis added). Stated another way, a plaintiff can establish deliberate indifference if he demonstrates that a prison official objectively "responded to [a] known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury*, 936 F.3d at 1235-36 (internal quotation marks omitted).

Here, Plaintiff alleges that there had been pervasive violence in the E-1 dorm including eleven stabbings within a fourteen-month time span. ECF No. 1-1 at 6. Plaintiff further asserts that despite the widespread violence, inmates were routinely allowed to hang linens and clothes that blocked the view of security cameras and the control room. *Id*. at 4-5. Plaintiff avers that in October 2022, he personally talked to Defendant Warden Toby about the stabbings in E-1 dorm and that he did not feel safe. *Id*. at 9. He states that he wrote Defendant Deputy Warden Hill a letter on October 2nd "explain that [he] was not comfortable and feared for [his] safety in E-1, due to the ongoing violence". *Id*. at 6. He also avers that he wrote Defendants Unit Manager Washington a letter on October 6th stating that he did not feel safe in the E-1 dorm due to the multiple stabbings

that occurred there. *Id*. at 6 and 9. Thus, Plaintiff asserts that after he personally notified Defendants Toby, Hill, and Washington that he feared for his safety in the E-1 dorm, these Defendants failed to respond in any way to his concerns. *Id*. at 6 and 9. When Plaintiff's allegations are construed liberally, they suggest that Defendants Toby, Hill, and Washington had an awareness of the risk of inmate-on-inmate attacks in the E-1 dorm at Hancock State Prison as well as a awareness that Plaintiff feared he would be attacked just as he was in November 2022.

As to Defendant Redd, Plaintiff complains that on the day that he was stabbed, "Def. Redd fail to conduct security checks in E-1 during their shift, instead, Def. Redd did abandon the post and hung out in other dorm controls for hours. *Id*. at 6-7. He further alleges that on this date, "E-1, as usual, had blankets and sheets hanging on railings, blocking any view by an officer/ security cameras". *Id*. at 7. Liberal construal of Plaintiff's allegations as to Defendant Redd suggest that he/she actively ignored obvious security risks in the dorm on the day that Plaintiff was stabbed. Such allegations conceivably state an Eighth Amendment constitutional claim for deliberate indifference to safety.

For the foregoing reasons, Plaintiff's Eighth Amendment claim for failure to protect against Defendants Toby, Hill, Washington, and Redd shall proceed for further factual development. Contrary to the more particularized allegations made as to these Defendants, Plaintiff's claims as to Defendants Ward, Ivy, and Wilson are not only vague and conclusory but are also cloaked in language that suggests liability based in respondent

superior. Accordingly, it is **RECOMMENDED** that Plaintiff's Eighth Amendment claims against Defendants Ward, Ivey, and Wilson for deliberate indifference to safety be **DISMISSED** without prejudice.

## OBJECTIONS

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this recommendation. The parties may seek an extension of time to file objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection should be no longer than **TWENTY (20) PAGES** in length. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made a colorable constitutional claim against Defendants Toby, Hill, Washington, and Redd, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence

filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is

19

contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED, DIRECTED, and RECOMMENDED,** this 10th day of April, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE