IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DAYVON GRANT,      :
            :
      Plaintiff,  :
            :
v.           :  Case No. 5:22-cv-396-MTT-AGH
            :
TIMOTHY WARD, *et al.*,   :
            :
      Defendants. :
            :
_____

## ORDER AND RECOMMENDATION

Before the Court is Defendants' motion for judgment on the pleadings (ECF No. 99). For the reasons stated below, it is recommended that Defendants' motion be granted.

## PROCEDURAL BACKGROUND

Plaintiff's claims arise from his confinement at Hancock State Prison ("HSP"). Compl. 3, ECF No. 1. Plaintiff alleges that on November 6, 2020, "several offenders entered [his] cell and proceeded to stab [him] with homemade knives (sharpened steel) in the left upper bicep, right top abdomen, right buttock, causing liver laceration and multiple other lacerations to various parts of [his] body." Am. Comp. 5-6, ECF No. 13. Plaintiff alleges generally that despite knowledge of pervasive violence at HSP—including Dorm E-1 where Plaintiff was assigned—Defendants failed to take corrective action, resulting in Plaintiff being attacked and seriously injured. *Id.* at 8-9. Plaintiff further alleges that Defendant Redd abandoned her

post in the E-1 control room prior to the attack despite knowledge of the violence in E-1 Dorm.  *Id.* at 5.

The Court received Plaintiff's initial complaint (ECF No. 1) on November 7, 2022, and his amended complaint (ECF No. 13) on May 9, 2023.  After preliminary screening, Plaintiff's deliberate indifference to safety/failure to protect claims against Defendants were allowed to proceed for further factual development.  Order & R. 16, Apr. 10, 2023, ECF No. 7; Order 9-10, May 17, 2023, ECF No. 17.  Defendants filed an answer (ECF No. 29) on July 17, 2023.  On February 26, 2025, they filed their motion for judgment on the pleadings, contending that Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies.  Defs.' Mot. for J. on the Pleadings 1, ECF No. 99.  Plaintiff timely responded (ECF No. 106) and Defendants filed a reply on April 8, 2025 (ECF No. 123).  The Court conducted an evidentiary hearing on Defendants' motion for judgment on the pleadings on May 6, 2025.[1]  Following the hearing, the Court allowed the parties to file supplemental briefs, which they did (ECF Nos. 141, 142).  Defendants' motion is ripe for review.

## DISCUSSION

### I.    Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

---

[1] Plaintiff moved for a copy of the evidentiary hearing transcript (ECF No. 140) at the Government's expense, citing 28 U.S.C. § 753(f).  Pl.'s Mot. for Tr. 1, ECF No. 143.  This provision allows for transcripts at Government expense for those granted indigent status in habeas cases, motions to vacate under 28 U.S.C. § 2255, and in other proceeding when a person is permitted to appeal *in forma pauperis* and the Court concludes that the appeal is not frivolous, but presents a substantial question. 28 U.S.C. § 753(f).  These circumstances do not apply to Plaintiff, and therefore, his motion (ECF No. 143) is **DENIED**.  If he wants a copy of the transcript, he will need to contact the court reporter and make arrangements for payment.

brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."   *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000).   "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process.   If their initial grievance is denied, prisoners must then file a timely appeal."   *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."   *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).   "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally."   *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015).

"Because exhaustion of administrative remedies is a matter in abatement and

not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." [2]  *Bryant*, 530 F.3d at 1374-75 (internal quotation marks omitted). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings.  *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true."  *Id.*  If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint "must be dismissed." *Id.*  "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*  The defendant bears the burden of proof during this

---

[2] Therefore, although Defendants argue exhaustion in a motion for judgment on the pleadings, it will be treated as a motion to dismiss.  Defendants specifically raised exhaustion as a defense in their answer, so it is not waived.  Defs.' Answer 2, ECF No. 29; *see Black v. Camon*, No. 7:06-cv-75-HL, 2008 WL 2119914, at *2 (M.D. Ga. May 19, 2008) (finding exhaustion was not waived and could be asserted in a motion for summary judgment because defendants raised it as a defense in their answer); *see also Holland v. Moore*, No. 5:16-cv-88-MTT-CHW, 2017 WL 7049112, at *3 (M.D. Ga. 2017) ("Although Defendant Moore raises the defense of failure to exhaust in a motion filed under Federal Rule of Civil Procedure 12(c), the motion is properly 'treat[ed as a] motion . . . brought under Rule 12(b).'" (alteration in original) (quoting *Bryant*, 530 F.3d at 1376)), *recommendation adopted by* 2018 WL 547231 (M.D. Ga. Jan. 24, 2018).

second step.  *Id.*  In resolving the factual dispute, a Court is authorized to make credibility determinations.[3]  *See Bryant*, 530 F.3d at 1377-78 (finding that district court did not clearly err in determining that plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court finding that one of inmate's grievances was not filed); *Black v. Rayburn*, No. 22-1082, 2024 WL 64291, at *1 (11th Cir. Jan. 5, 2024) ("Further, in resolving a factual dispute, the court may make credibility determinations.").

A prisoner need only exhaust administrative remedies that are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016).  In *Ross*, the Supreme Court held that an administrative procedure is unavailable under the PLRA when either (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 643-44.  For a remedy to be available, it "must be capable of use for the accomplishment of its purpose."  *Turner*, 541 F.3d at 1084 (quotation marks omitted).  The burden is on the defendant to show that an administrative remedy is available, but "once that burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was

---

[3] Thus, Plaintiff's contention that the Court is not entitled to make credibility determinations, Pl.'s Suppl. Br. 2, ECF No. 142, is incorrect.

subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (internal quotation marks omitted) (citing *Turner*, 541 F.3d at 1085). District courts must use the two-step *Turner* analysis when addressing the availability of the grievance process. *See Jenkins v. Sloan*, 826 F. App'x 833, 839 (11th Cir. 2020) (directing district courts to apply "the two-step *Turner* test when addressing the question of exhaustion and the *availability* of the grievance process").

## II.    HSP Administrative Procedures

Defendants submitted the declaration of Rashedah Mitchell—the Grievance Coordinator at HSP—to establish that administrative remedies were available to Plaintiff at HSP.[4]  Mitchell Decl. ¶ 1, ECF No. 99-2.  Mitchell's responsibilities include overseeing the grievance process at HSP and acting as custodian of institutional grievance records. *Id.*  According to Mitchell, HSP follows the Georgia Department of Corrections ("GDC") Standard Operating Procedure 227.02 (the "SOP") regarding grievances. *Id.* ¶ 2.

The SOP mandates that an inmate must follow a two-step process in order to exhaust his remedies: (1) file an original grievance no later than ten calendar days from the date the inmate knew or should have known of the facts giving rise to the grievance; and (2) file an appeal to the Central Office.  Mitchell Attach. 1, at 8, ECF No. 99-3.  After a grievance is filed, the Grievance Coordinator will screen the

---

[4] Mitchell also testified at the evidentiary hearing to substantially the same information contained in her declaration.  Hr'g Tr. 7-47, ECF No. 140.

grievance and accept it for processing or recommend rejection of the grievance for one of the reasons enumerated in the SOP, including raising a non-grievable issue, untimeliness, or raising more than one issue. *Id.* at 9. If a grievance is accepted, the Warden/Superintendent has forty calendar days from the date the offender submitted the grievance to respond, though a one-time ten-day extension may be granted. *Id.* at 11. An inmate may file an appeal within seven days after the Warden/Superintendent issues a decision or after the time allowed for the Warden to decide expires. *Id.* at 14. The Commissioner has one hundred and twenty days within which to respond to a grievance appeal. *Id.* at 15.

Pursuant to the SOP, an inmate "may file a grievance about any condition, policy, procedure, or action or lack thereof that personally affects the Offender." *Id.* at 4. A Warden/Superintendent "should reject" a grievance "if it . . . [i]s not timely filed; however, the Grievance Coordinator may waive the time limit for Good Cause[.]" Mitchell Attach. 1, at 9. The SOP defines "good cause" as "[a] legitimate reason involving unusual circumstances that prevented the Offender from timely filing a grievance . . . . Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." *Id.* at 2.

## III. Plaintiff's Grievance

According to Mitchell, Plaintiff filed one grievance—Grievance Number 317339—related to his allegations in this complaint. Mitchell Decl. ¶ 11; Mitchell Attach. 2, at 11, ECF No. 99-4. The grievance was filed on November 24, 2020, and

states in its entirety:

> On 11-6-20 I was assaulted and stabbed in E-1[.]   After the incident the
> staff here at the prison responce [sic] was very unprofessional and life
> threatening[.]   Sgt. Wilson and Officer Hill took me to I.D. while
> awaiting E.M.S.   I sat for over an hour and was taken to Millidgeville
> [sic] were [sic] I waited another hour when my wounds were attended
> to.   I was taken to Macon.   When I got back I was given the wrong
> medication, nothing for infections and was treated very unprofessional
> due to the negligence of the staff put my life and safety in further
> jeopardy.   I want for all staff involved to be disciplined or removed from
> their positions and a full investigation to be done all my property to be
> replaced and I'm filing a lawsuit.

Mitchell Attach. 2, at 11.   Along with the grievance, Plaintiff provided a written

statement, largely repeating the allegations in his grievance.   *Id.* at 13-14.   On

January 4, 2021, Defendant Ivey— the Deputy Warden of Security—denied Plaintiff's

grievance.[5]   *Id.* at 9.   In the response, Defendant Ivey did not mention the grievance

being untimely, but instead denied the grievance on the merits, stating that prison

staff acted professionally.   *Id.*

Plaintiff appealed the grievance denial to the Central Office on January 8,

2021.   *Id.* at 12.   On March 3, 2021, the Central Office denied the appeal, stating:

> A member of my staff has reviewed your grievance.   The grievance
> revealed that you failed to follow the proper procedure for filing the
> formal grievance.   Policy states that the Grievance Form must be filed
> no later than 10 calendar days from the date you knew or should have
> known, of the facts giving rise to the grievance.   Due to your failure to
> follow policy guidelines, the Office of Professional Standards will not
> address this grievance.

Mitchell Attach. 2, at 2.

---

[5] As the Deputy Warden of Security, Defendant Ivey was considered a "Superintendent" and
responded to Plaintiff's grievance in the absence of the Warden.   Hr'g Tr. 62.   The Clerk is
**DIRECTED** to correct the docket to reflect the correct spelling of Defendant Ivey's last name.

Following the November 6, 2020, attack, Plaintiff was transported to Navicent-Health Macon for medical treatment. Mitchell Attach. 4, at 2, ECF No. 99-6; Ivey Decl. ¶ 4, ECF No. 123-1. He returned to HSP on November 12, 2020, and was placed in J-Building, which is a Tier I administrative segregation housing unit. Mitchell Attach. 4, at 2; Ivey Decl. ¶¶ 5, 12. On November 19, 2020, Plaintiff was moved to G-Building, which is also a Tier I administrative segregation unit, where he remained—except for one day in April—until May 12, 2021, when he was transferred to Johnson State Prison. Mitchell Attach. 4, at 2. Hence, Plaintiff was in G-Building when he filed his grievance on November 24, 2020. *Id.*

## IV. Plaintiff's Failure to Exhaust his Available Administrative Remedies

### A. Parties' Arguments

Defendants contend that Plaintiff failed to exhaust his administrative remedies because the grievance he filed was untimely. Defs.' Br. in Supp. of Mot. for J. on the Pleadings 6-7, ECF No. 99-1. They "concede" that Plaintiff could not file a grievance while he was hospitalized, but they contend that he could have filed his grievance within ten days of returning from the hospital on November 12, 2020. *Id.* Instead, he did not file his grievance until November 24, 2020. *Id.* at 7. Consequently, he did not properly exhaust his administrative remedies as required by the PLRA. *Id.* at 8.

Plaintiff raises various arguments in response.[6] First, he contends his November 24, 2020, grievance "was timely given his medical condition and

---

[6] Plaintiff addressed exhaustion both in his response (ECF No. 106) to Defendants' motion for

circumstances." Pl.'s Br. in Resp. to Mot. for Summ. J. 4, ECF No. 104-3. He asserts that "[g]iven the severity of his injuries and hospitalization, Plaintiff was physically unable to file a grievance immediately after the attack." *Id.* He states that the SOP "allows for exceptions to grievance deadlines in cases of medical incapacitation." *Id.* Second, Plaintiff contends this grievance was timely because it was filed within ten "operational days" of his return from the hospital. Pl.'s Suppl. Br. 1, ECF No. 142. Third, Plaintiff appears to suggest that he timely grieved the issues raised in this case through two pre-incident grievances filed in March and June 2020. *Id.* at 2.

Further, in his briefing and during the evidentiary hearing, Plaintiff sets forth several reasons for why administrative remedies were unavailable to him: (1) his medical condition upon return from the hospital; (2) Covid-19 restrictions which "substantially hindered prison operations, access to grievances materials, and staff availability"; (3) "systemic failures" in GDC's grievance procedures; (4) Defendants' destruction and withholding of grievances; (5) Plaintiff's "fear of retaliation"; (6) and staffing shortages at HSP. Pl.'s Resp. to Mot. for J. on the Pleadings 1-2, ECF No. 106; Pl.'s Br. in Resp. to Mot. for Summ. J. 4-6; Hr'g Tr. 80, 148; Pl.'s Suppl. Br. 2.

Plaintiff also argues that Defendants' motion for judgment on the pleading should be denied because it is procedurally improper. Pl.'s Br. in Resp. to Mot. for

---

judgment on the pleadings and in his response (ECF No. 104) to Defendants' motion for summary judgment. The Court considered Plaintiff's arguments in both filings. Plaintiff's motion to file excess pages (ECF No. 105) in response to Defendants' summary judgment motion is **GRANTED**. The Court also considered Plaintiff's arguments raised during the evidentiary hearing and in his supplemental brief (ECF Nos. 140, 142).

J. on the Pleadings 2-3, ECF No. 106-1.

Finally, Plaintiff argues that he was not required to file a grievance because "Defendants were already on notice of the substantial risks to Plaintiff's safety due to systemic violence at [HSP] and throughout the [GDC]."   Pl.'s Resp. to Mot. for J. on the Pleadings 2.

Below, the Court first examines whether Plaintiff exhausted his administrative remedies under the SOP.   It then considers Plaintiff's arguments that the grievance procedures were unavailable to him.   Finally, the Court addresses Plaintiff's two alternate arguments for why Defendants' motion should be denied. As explained in more detail, the Court finds that administrative remedies were available to Plaintiff, but that he failed to exhaust those remedies.   Defendants' motion for judgment on the pleadings should consequently be granted.

B.    <u>Plaintiff's Failure to Exhaust Under the SOP</u>

1.    *Ten-Day Time Limit*

Initially, the Court dispenses with Plaintiff's argument that his November 24, 2020, grievance was timely because it was filed within ten "operational days" of his return from the hospital, which excludes weekends.   Pl.'s Suppl. Br. 1.   He does not cite the page of the SOP that would support such a conclusion, and in fact, the SOP specifically states that an inmate must file a grievance within "ten (10) Calendar Days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance."   Mitchell Attach. 1, at 8.   Thus, contrary to Plaintiff's argument, his grievance filed on November 24, 2020, was not timely under the SOP.

11

### 2.    *Timeliness of Plaintiff's November 24, 2020, Grievance*

Plaintiff's contention that he timely exhausted his administrative remedies "given his medical condition and circumstances" raises an issue both as to exhaustion of his remedies and availability of his remedies.    The Court firsts conduct a *Turner* analysis on Plaintiff's argument that his grievance was timely under the SOP.

The parties do not dispute that the SOP gives an inmate ten days following an incident to file a grievance.    The parties also do not dispute the fact that Plaintiff could not file a grievance while he was hospitalized.    Further, it is not disputed that Plaintiff filed his grievance on November 24, 2020, which is twelve days after Plaintiff was released from the hospital.    Therefore, even crediting Plaintiff with the period of his hospitalization, his grievance was not filed within ten days as required by the SOP.    However, Plaintiff argues his grievance is timely because the SOP allows inmates to file grievances outside of the ten-day window "in cases of medical incapacitation."    Pl.'s Br. in Resp. to Mot. for Summ. J. 4.

Assuming Plaintiff's contention is sufficient to satisfy step one of the *Turner* analysis, the Court finds, at step two, that he failed to exhaust his administrative remedies in compliance with the SOP.    As previously noted, the SOP allows a grievance coordinator to consider an untimely grievance for "good cause," which includes being away from the prison or "serious illness."    Mitchell Attach. 1, at 2, 8-9.    Significantly, the SOP allows an untimely grievance to be considered "only . . . upon good cause."    *Id.* at 8.    The grievance form completed by Plaintiff specifically instructs inmates—if their grievance is being filed outside the ten-day time limit—to

"explain why." Mitchell Attach. 2, at 11. However, while Plaintiff's grievance referenced his hospitalization and not receiving proper medication," he never stated that his physical condition prevented him from timely filing his grievance. *Id.* He never acknowledged or mentioned that his grievance was outside of the ten-day time limit even though the form expressly required that he account for such untimeliness and "explain why" it should be waived. *Id.* Similarly, his written statement submitted along with his grievance—while expanding somewhat on his allegations of medical staff negligence—also failed to explain why he was unable to timely file a grievance. *Id.* at 13-14.

"To properly exhaust, [an inmate] must assert good cause during the administrative proceedings before filing a federal civil action." *Myton v. Moye*, No. 6:19-cv-32, 2021 WL 4978670, at *2 (S.D. Ga. Sept. 17, 2021) (citing *Johnson v. Meadows*, 418 F.3d 1152, 1158-59 (11th Cir. 2005) ("Johnson did not request leave to file an untimely grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint.")), *recommendation adopted by* 2021 WL 4979407 (S.D. Ga. Oct. 26, 2021). Here, because Plaintiff did not properly invoke the good cause exception provided by the SOP and because the grievance was ultimately rejected as untimely, Plaintiff's November 24, 2020, grievance was insufficient to properly exhaust his administrative remedies.[7] *See Johnson*, 418

---

[7] At the evidentiary hearing, Plaintiff argued that Defendants waived an exhaustion defense because Defendant Ivey denied his grievance on the merits. Hr'g Tr. 100. However, Defendant's exhaustion defense is not waived because Plaintiff's grievance was ultimately rejected as untimely by the Central Office. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("[A] prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the

F.3d at 1159 ("Allowing Johnson's untimely grievance to meet the exhaustion requirement would run counter to the understanding that § 1997e(a) requires prisoners to invoke and fully exhaust all available administrative grievance processes.").

### 3. Pre-Incident Grievances

Although not clear, Plaintiff also appears to argue that two grievances he claims he filed prior to the November 6, 2020, were sufficient to exhaust his administrative remedies.[8] Pl.'s Suppl. Br. 2. At the evidentiary hearing, Plaintiff introduced copies of a grievance with a handwritten notation stating it was filed on March 10, 2020, and a grievance with a handwritten notation that it was filed on June 12, 2020. Pl's Hr'g Ex. 1, at 1-2, ECF No. 138. He also submitted one grievance receipt which he stated was attached to one of the grievances, though he could not remember which one. *Id.* at 3; Hr'g Tr. 121. In the March 2020 grievance, Plaintiff complained that Defendants incorrectly labeled him as an "STG Gang-member," which he claimed placed him in danger and resulted in him receiving death threats and being extorted of property. Pl.'s Hr'g Ex. 1, at 2. He requested that he be placed in protective custody and transferred. *Id.* In his June 2020 grievance, Plaintiff claimed that the gang designation "put a target on [his] back and [] caused

---

last available stage of administrative review."); *see also Glenn v. Smith*, 706 F. App'x 561, 564 (11th Cir. 2017) (finding exhaustion defense was not waived by prison's denial of the untimely grievance on the merits because it was rejected as untimely at the appeals stage).

[8] At the evidentiary hearing, Plaintiff conceded he was only introducing these two grievances to show the unavailability of an administrative remedy. Hr'g Tr. 137. However, because it is unclear if Plaintiff wishes to go further and claim they were themselves sufficient for exhaustion, the Court—in an abundance of caution—addresses such contention.

[him] to be extorted out of [his] cell and force[d] to sleep in [the] day room." *Id.* at 1. He requested a hearing on his gang designation and to be placed "in a better dorm" or in protective custody. *Id.* The Court notes that at the time Plaintiff claims he submitted the June 2020 grievance, he was in a different dorm than the one where the November 2020 assault later occurred. Mitchell Attach. 4, at 2.

The Court rejects any contention that these two grievances are sufficient to show exhaustion. While there may be some circumstances in which pre-incident grievances are sufficient to exhaust under a continuing-violation theory, *see Parzyck v. Prison Health Servs., Inc.*, 627 F.3d, 1215, 1219 (11th Cir. 2010), Plaintiff's grievances here—filed several months prior to the attack and without any specific information about the source of any threats—were insufficient to alert prison authorities to the problem such that it could be addressed internally.

Moreover, the Court concludes that Plaintiff's contention that he filed these grievances is not credible. Neither grievance appears in Plaintiff's grievance history. Mitchell Attach. 3, at 5, ECF No. 99-5. Plaintiff could not identify to whom he gave either grievance. Hr'g Tr. 116-17, 121. Additionally, his testimony about whether he appealed these grievances is inconsistent and implausible. He initially testified that he appealed both grievances. *Id.* at 121-22. Then, he testified that he could not appeal because he never received responses, so he followed up with letters and "in-person conversations." *Id.* at 122. Then, he changed track again and claimed that after not receiving responses, he "went through the whole process" of appeal, though—unlike his grievances—he tendered no copies of appeals into

evidence. *Id.* at 123. When asked how he appealed the grievances, he initially stated that he turned them into a counselor, but he then testified that he mailed the appeals to the Central Office himself. *Id.* at 126. Petitioner's testimony regarding these grievance is simply not believable. Thus, even if they could otherwise have been sufficient for exhaustion, the Court finds that neither was filed, appealed, or exhausted.

     C.    <u>Administrative Remedies Were Available to Plaintiff</u>

Having concluded that Plaintiff failed to properly exhaust his administrative remedies under the SOP, the Court now addresses his argument that the remedies were unavailable. As outlined above, Plaintiff made several factual assertions as to why the remedies were unavailable. Thus, the Court proceeds to the second step of the *Turner* analysis and "make[s] specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. "In terms of a defendant's initial showing, *Turner* only requires a defendant to show a remedy is 'generally available.'" *Daker v. Owens*, No. 6:14-cv-47, 2021 WL 725668, at *5 (S.D. Ga. Feb. 22, 2021) (quoting *Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841, 845 (11th Cir. 2020)), *recommendation adopted by* 2021 WL 1175213 (S.D. Ga. Mar. 26, 2021). A defendant need not show that "a remedy was available to [a plaintiff] practically speaking." *Wright*, 820 F. App'x at 845. Once the defendant's burden is met, "the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter*, 974 F.3d at 1356 (internal quotation marks and citation omitted). Here, the Court

concludes that Defendants have shown that an administrative remedy was generally available to inmates at HSP—including Plaintiff—through the testimony and declarations of Defendants Ivey and Mitchell, Plaintiff's grievance filed in this case, and his grievance history (ECF Nos. 99-2 through 99-6; ECF Nos. 123-1 through 123-4; ECF No. 140, at 7-47, 50-92); *see Wright*, 820 F. App'x at 845.   Further, the Court finds that Plaintiff fails to meet his burden of showing the remedy was subjectively or objectively unavailable to him.

After considering the <u>entire record</u> in this case,[9] including Plaintiff's hearing testimony, the Court concludes that Plaintiff's explanations for why the grievance procedures were unavailable to him are not credible.   First, it is significant to the Court that in all of Plaintiff's numerous filings in this case and his hearing testimony, he has not presented any specific evidence about his efforts to file a timely grievance in the period between his return from the hospital on November 12, 2020, and the ten-day deadline for filing a grievance on November 22, 2020.   He never discusses when he started requesting a grievance form; who he spoke to about requesting a form; how many times he requested a form; occasions when he requested a form and was denied or ignored; occasions when he attempted to obtain a form but there was no staff member available; when and how he was finally able to obtain a grievance

---

[9] The record in this case is voluminous, with Plaintiff filing exhibits and evidence in a piecemeal fashion and often adopting or referring to exhibits attached to other filings.   He also submitted multiple exhibits via thumb drive, all of which have either been scanned into the record or stored in the Court's digital evidence vault.   The Court has painstakingly reviewed every piece of evidence in this case.   This includes a notebook that Plaintiff testified contained relevant information.   Hr'g Tr. 132; Pl's Ex. 3, ECF No. 139-3.   However, the notebook primarily consists of Plaintiff's legal research and notes regarding other incidents.   To the extent it touches on the November 6, 2020, incident or the issue of exhaustion, Plaintiff's cryptic notes are self-serving and/or add no useful information.   *Id.* at 4-5, 8.

form; who provided him the form; when he completed the form; efforts he made to timely submit the form; who he talked to about the need to submit the form; or occasions when he tried to submit the form but was denied, ignored, or unable to contact a staff member.  He also never describes any moment during the ten-day window when he became concerned about his ability to meet the grievance deadline. In neither his grievance nor in his briefing does he identify a single prison official by name or description who refused him a grievance form from November 12, 2020, until November 24, 2020.  He similarly failed to do so during his hearing testimony. Moreover, he fails to explain what specifically about his physical or medical condition prevented him from completing and turning in a grievance or whether he requested assistance to complete and file a grievance.  Regarding this critical time period, Plaintiff's evidence about his efforts to file a grievance is almost entirely blank. While it is understandable that Plaintiff may not have exact dates and times or all of the names of staff he may have spoken to, the complete absence of *any* specific information, detail, or description is telling.

Second, the Court finds Plaintiff's assertion that his administrative remedies were rendered unavailable due to his medical condition is unconvincing.  According to the hospital discharge report, Plaintiff was instructed to alternate Ibuprofen and Tylenol for pain.  Mitchell Attach. 2, at 8.  There was no mention of other medication, including for an infection.  *Id.*  Moreover, according to a witness statement, Plaintiff was seen by a doctor on November 17, 2020, and no signs of infection were noted.  *Id.* at 24.  And again, Plaintiff has not presented any

testimony or other evidence specifically explaining how his physical or medical condition prevented him from timely filing a grievance.

Third, Plaintiff's other grounds of unavailability are either not tied to the particular circumstances of his case, inconsistent, or not credible. He mentions Covid-19 restrictions and understaffing affecting the grievance process, but his allegations are generalized, and he fails to explain how those particular issues prevented *him* from timely filing a grievance. In contrast, Defendant Ivey testified that the Covid protocols "simply" meant staff had to wear a mask and that they "still performed all [their] duties." Hr'g Tr. 64. This included visits by prison staff to inmates in administrative segregation—documented on a Performance Recording Sheet attached to each inmate's door—and the providing of meals to inmates by staff three times a day. *Id.* at 56-59, 64-65; Ivey Attach. 3, at 2, ECF No. 123-4. Plaintiff's testimony did not specifically rebut this evidence that staff was available to allow him to commence and complete the grievance process.[10]

At one point, Plaintiff suggests it was fear of retaliation that prevented him from filing his grievance. Pl.'s Br. in Resp. to Mot. for Summ. J. 5-6. This is inconsistent with Plaintiff's other asserted reasons involving staffing shortages and

---

[10] During the hearing, Plaintiff referred the Court to Exhibit G, which consists of two recordings—one with a counselor and one with Defendant Hill—which Plaintiff contends show that "the documentation that was attached to my isolation door sheet was falsified." Hr'g Tr. 124-26; Pl.' Notice 2, ECF No. 64. The Court has listened to the recordings, and they are irrelevant to the issue of exhaustion. The alleged falsification concerns a separate door sheet and its "misclassification of the description" of the November 6, 2020, incident. Pl.'s Notice 2. The particular door sheet that Plaintiff refers to is among the digital documents he submitted on a thumb drive on September 18, 2024, and is titled, "ex i hpld door placement sheet." It is stored in the Court's digital evidence vault. The recordings and isolation door sheet have no bearing on the availability of staff during the November 12, 2020, to November 24, 2020, timeframe.

his physical condition, and he does not explain why his fear of retaliation dissipated sufficiently for him to file a grievance on November 24, 2020.  Moreover, he did not testify at the hearing that a fear of retaliation prevented him from timely filing a grievance in this matter, and the Court finds his suggestion that it played a role not credible.

Plaintiff also argues that unavailability is demonstrated by the two earlier grievances he claims he filed at HSP in March and June 2020—that he asserts were never responded to—and a grievance he filed at Telfair State Prison in 2024 where the Warden's response attached a grievance from another inmate.   Hr'g Tr. 101, 114-15, 121, 137, 140-41; Pl's Hr'g Ex. 1; Pl.'s Hr'g Ex. 2, ECF No. 138-1.   The Court disagrees.  As discussed above, the Court concludes that Plaintiff did not file the earlier grievances.   Further, even if they were filed and somehow lost or destroyed, Plaintiff does not allege that he filed a timely grievance regarding the November 6, 2020, attack that was withheld or destroyed, so he does not tie his allegation about the prior grievances to this case.   Similarly, Plaintiff fails to show how the 2024 mix-up with the Telfair State Prison grievance has any relevance to the availability of Plaintiff's administrative remedies at HSP in November 2020.

In summary, the Court concludes that Plaintiff had an available administrative remedy and that he failed to timely utilize it. Therefore, his complaint should be dismissed for failure to exhaust.

D.    Defendants' Rule 12(c) Motion is Proper

Plaintiff argues that Defendants' motion for judgment on the pleadings is

"procedurally improper" because discovery is closed and their arguments are duplicative of those raised in their motion for summary judgment.   Pl.'s Br. in Resp. to Mot. for J. on the Pleadings 2-3.   Plaintiff's argument is meritless.

A motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed—but early enough not to delay trial[.]"   Fed. R. Civ. P. 12(c).   Here, a trial date has not even been set.   Defendants raised exhaustion as a defense in their answer, and they have not previously filed a motion under Rule 12.   Defs.' Answer 2.   Therefore, they have not waived their right to raise exhaustion.   *See Holland*, 2017 WL 7049112, at *3 (noting that the defendant's motion for judgment on the pleadings for lack of exhaustion "raise[d] no forfeiture or waiver concerns" because the defendant's motion was her "first motion filed pursuant to Rule 12").   Further, courts routinely consider failure to exhaust raised in motions for judgment on the pleadings.   *See, e.g.*, *Doe v. Sheely*, 855 F. App'x 497, 500-01 (11th Cir. 2021) (affirming district court's dismissal of plaintiff's claim for failure to exhaust on defendant's motion for judgment on the pleadings).

Regarding Plaintiff's contention that Defendants' motion for judgment on the pleadings is duplicative of arguments made in their motion for summary judgment, the Court notes that Defendants filed the motion for judgment on the pleadings (ECF No. 99) prior to filing their motion for summary judgment (ECF No. 101).   Further, Defendants' references to Plaintiff's lack of grievances in their motion for summary judgment is related to their argument that they were unaware of any risk to

Plaintiff's safety, not a defense based on failure to exhaust.[11]   Defs.' Br. in Supp. of
Mot. for Summ. J. 14-15, ECF No. 101-2.   Finally, even if there was some degree of
duplication—which there is not—Plaintiff does not explain why that would prevent
the Court from considering the merits of Defendants' exhaustion defense raised in
the motion for judgment on the pleadings.

      E.    <u>Defendants' Knowledge of Risk</u>

      Plaintiff also seems to suggest that he was not required to exhaust his
administrative remedies because the Defendants were aware of the risk to Plaintiff's
safety prior to the attack based on "systemic violence" at HSP.   Pl.'s Resp. to Mot. for
J. on the Pleadings 2.   He submits that "an inmate is not required to file a grievance
where prison officials were already aware of a substantial risk to his safety."   *Id.*
However, exhaustion under the PLRA is "mandatory," and "[a]n inmate must use all
steps in the administrative process and comply with any administrative deadlines
and other critical procedural rules before exhaustion is proper."   *West v. Higgins*, 346
F. App'x 423, 425 (11th Cir. 2009) (internal quotation marks omitted).   Thus,
Plaintiff was required to exhaust his administrative remedies as provided by the GDC
SOP, and this requirement is not one the Court has discretion to excuse.   *See Beals
v. Jay*, 730 F. App'x 633, 637 (10th Cir. 2018) (rejecting the plaintiff's argument that
"exhaustion was unnecessary because the defendants were fully aware of his
complaints").

---

[11] Because the Court recommends that Plaintiff's complaint be dismissed for failure to exhaust, it does
not address the merits of Defendants' arguments raised in their motion for summary judgment.

## CONCLUSION

For the reasons explained above, it is recommended that Defendants' motion for judgment on the pleadings (ECF No. 99) be granted and that Plaintiff's complaint be dismissed for failure to exhaust his administrative remedies.[12, 13]    Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof.    Any objection should be no longer than TWENTY (20) PAGES in length.    The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

---

[12] Dismissal for failure to exhaust is generally without prejudice, and that is what the Court is recommending here regarding Plaintiff's failure to exhaust.  *See Garcia v. Obasi*, No. 21-12919, 2022 WL 669611, at *4 (11th Cir. Mar. 7, 2022) (citing *Bryant*, 530 F.3d at 1374-75 & n.12).    Nevertheless, it is likely that the statute of limitations has expired in this case, and thus, dismissal without prejudice for failure to exhaust is effectively a dismissal with prejudice.  *See Stephenson v. Warden, Doe*, 554 F. App'x 835, 837 (11th Cir. 2014) ("[W]here a dismissal without prejudice has the effect of precluding the plaintiff from re-filing his claim due to the running of the statute of limitations, it is tantamount to a dismissal with prejudice." (citing *Justice v. United States*, 6 F.3d 1474, 1482 & n.15 (11th Cir.1993))); *see also Massengale v. Ford*, No. 5:17-CV-99-MTT, 2019 WL 728971, at *1 n.1 (M.D. Ga. Feb. 20, 2019) (noting that even if the dismissal for failure to exhaust was effectively with prejudice, dismissal was "nonetheless appropriate because the Plaintiff had ample opportunity to exhaust his administrative remedies before filing suit but failed to do so").

[13] Also pending are Plaintiff's motions for default judgment based on spoliation and alleged discovery abuses (ECF No. 71), for preliminary injunction (ECF Nos. 86, 144), for judicial notice (ECF No. 87), to expedite ruling (ECF No. 89), for summary judgment (ECF No. 103), and to compel mediation (ECF Nos. 114, 119), and Defendants' motion for summary judgment (ECF No. 101).    If this recommendation is adopted, it is **RECOMMENDED** that these motions be **DENIED AS MOOT**. Plaintiff has also filed his fifth motion to appoint counsel (ECF No. 135).    The Court denied (ECF Nos. 33, 42, 45, 54) his previous motions.    Plaintiff has demonstrated his ability to litigate this case and present necessary facts and arguments to the Court for review, and therefore, Plaintiff's fifth motion to appoint counsel (ECF No. 135) is also **DENIED**.

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED** and **RECOMMENDED**, this 20th day of June, 2025.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE