IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DAYVON GRANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:22-cv-396 (MTT) |
| | ) |
| TIMOTHY WARD, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

United States Magistrate Judge Amelia G. Helmick recommends granting the defendants' motion for judgment on the pleadings (Doc. 99) because pro se Plaintiff Dayvon Grant failed to exhaust his administrative remedies. Doc. 146. Grant objected. Doc. 147. Pursuant to 28 U.S.C. § 636(b)(1), the Court reviewed the Recommendation de novo.

### I. BACKGROUND

In this 42 U.S.C. § 1983 action, Grant claims the defendants violated his Eighth Amendment rights by failing to protect him from a stabbing at the hands of other inmates in the E-1 dormitory at Hancock State Prison ("HSP"). Docs. 1; 13. The stabbing incident occurred on November 6, 2020, and Grant was hospitalized from his injuries and did not return to HSP until November 12, 2020. Docs. 71-11 at 2; 99-4 at 11; 99-1 at 6; 101-13 at 2; 147 at 2. When Grant returned from the hospital, he was placed in administrative segregation. Docs. 123 at 3 n.1; 101-13 at 2.

Grant filed a grievance on November 24, 2020, twelve days after returning from the hospital (the "November 24, 2020 Grievance").[1]  Doc. 123-2 at 11.  Grant's grievance was first denied on the merits then rejected as untimely during the appeals process.  *Id.* at 2; 4.  In his grievance, Grant did not invoke the "good cause" exception or explain why his grievance was late.  *Id*. at 11.

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust all available administrative remedies before filing lawsuits related to prison conditions.  42 U.S.C. § 1997e(a).  The parties agree that the Magistrate Judge stated properly the legal framework for analyzing failure to exhaust defenses.  Docs. 99-1 at 4; 147 at 3; *see Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  Because the Magistrate Judge convened an evidentiary hearing, the Court adds this.  The Eleventh Circuit has "cautioned district judges from overruling a magistrate judge's finding where credibility determinations are dispositive."  *Manning v. School Bd.,* 244 F.3d 927, 946-47 (11th Cir. 2001).  Indeed, "a district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings."  *Amlong & Amlong, P.A. v.*

---

[1] The parties agree that the November 24, 2020 Grievance is the applicable grievance, and the defendants do not dispute that the November 24, 2020 Grievance gave the defendants time and opportunity to address the issues giving rise to Grant's deliberate indifference to safety/failure to protect claims.  Docs. 99-1 at 6; 147 at 2; *see Parzyck v. Prison Health Servs. Inc.,* 627 F.3d 1215, 1217 (11th Cir. 2010) (citing *Woodford v. Ngo,* 548 U.S. 81, 93 (2006)).

Nonetheless, the Court notes that although the November 24, 2020 Grievance briefly mentions the stabbing incident, the grievance is primarily concerned with the medical treatment Grant received after the stabbing incident.  *See* Docs. 71-11 at 2; 99-4 at 11.  The Court makes this point because this Court and the Eleventh Circuit have observed that when an inmate grieves an ongoing failure to provide medical treatment, an original grievance must be filed within ten days of *that issue*—i.e., the ongoing failure to provide medical treatment.  *See McIlwain v. Burnside,* 830 F. App'x 606, 611 (11th Cir. 2020); *Gates v. McKenzie,* 2024 WL 4818328 at *4 (M.D. Ga. Nov. 18, 2024).  But neither party construes the grievance as a challenge to ongoing medical treatment, and Grant does not assert a deliberate indifference to serious medical needs claim.  *See* Docs. 1; 13.

*Denny's, Inc.,* 500 F.3d 1230, 1250 (11th Cir. 2007).  "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible <u>only</u> when there is an 'articulable basis for rejecting the magistrate's original resolution of credibility.'"  *Id.* (quoting *United States v. Marshall,* 609 F.2d 152, 155 (5th Cir. 1980)).

The Georgia Department of Corrections ("GDC") Standard Operating Procedure ("SOP") 227.02 outlines a two-step grievance process: inmates must file a grievance within ten calendar days "from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance" and appeal any denial to the Central Office.  Doc. 99-3 at 9.  GDC SOP 227.02 allows for untimely grievances to be considered for "good cause," such as serious illness, but the prisoner must explain the delay.  *Id*. at 3, 9.

## II. DISCUSSION

As the Magistrate Judge summarized, the defendants acknowledged that Grant could not have filed a grievance while he was in the hospital; however, they argue he was required to file a grievance within ten days of his return from the hospital.  Doc. 99-1 at 6.  In his response, Grant argued that administrative remedies were unavailable to him upon his return from the hospital because of COVID-19 restrictions and his placement in administrative segregation; he claimed that he "did file a grievance regarding the assault as soon as [he] was able."  Doc. 106-1 at 5.

The Magistrate Judge held an evidentiary hearing on May 6, 2025.  Doc. 140.  On June 20, 2025, the Magistrate Judge, in a thorough Report and Recommendation, concluded that Grant's November 24, 2020 Grievance was not timely, and he failed to exhaust available administrative remedies.  Doc. 146.  The Magistrate Judge's findings

regarding the critical period of November 12, 2020 (return from the hospital) to November 22, 2020 (grievance deadline) merit quotation in full.

> After considering the entire record in this case, including Plaintiff's hearing testimony, the Court concludes that Plaintiff's explanations for why the grievance procedures were unavailable to him are not credible.  First, it is significant to the Court that in all of Plaintiff's numerous filings in this case and his hearing testimony, he has not presented any specific evidence about his efforts to file a timely grievance in the period between his return from the hospital on November 12, 2020, and the ten-day deadline for filing a grievance on November 22, 2020.  He never discusses when he started requesting a grievance form; who he spoke to about requesting a form; how many times he requested a form; occasions when he requested a form and was denied or ignored; occasions when he attempted to obtain a form but there was no staff member available; when and how he was finally able to obtain a grievance form; who provided him the form; when he completed the form; efforts he made to timely submit the form; who he talked to about the need to submit the form; or occasions when he tried to submit the form but was denied, ignored, or unable to contact a staff member.  He also never describes any moment during the ten-day window when he became concerned about his ability to meet the grievance deadline. In neither his grievance nor in his briefing does he identify a single prison official by name or description who refused him a grievance form from November 12, 2020, until November 24, 2020.  He similarly failed to do so during his hearing testimony.  Moreover, he fails to explain what specifically about his physical or medical condition prevented him from completing and turning in a grievance or whether he requested assistance to complete and file a grievance.  Regarding this critical time period, Plaintiff's evidence about his efforts to file a grievance is almost entirely blank.  While it is understandable that Plaintiff may not have exact dates and times or all of the names of staff he may have spoken to, the complete absence of *any* specific information, detail, or description is telling.

Doc. 146 at 17-18 (footnote omitted).  The record supports these findings and Grant makes no meaningful effort to challenge them.  Still, in his June 23, 2025, 22-page, typewritten, single-spaced objection, Grant primarily argues that the grievance process was unavailable.[2]  Doc. 147.

---

[2] Apart from typewritten, Grant's citation-laden objection was delivered by Federal Express.  Doc. 147-2.  At the evidentiary hearing, Grant had the assistance of his father, a paralegal.  Doc. 140 at 155, 160-61.

First, Grant acknowledges that GDC SOP 227.02 requires grievances to be filed within ten "calendar days."[3]  Doc. 147 at 2-3.  However, Grant asserts that his November 24, 2020 Grievance was timely because although it was filed twelve days after he returned from the hospital, his access to the administrative process was constrained by the limited availability of grievance counselors in administrative segregation.  *Id*.  GDC SOP 209.06 governs procedures in administrative segregation.  The Court construes this as a component of Grant's argument that the grievance process was unavailable to him under *Ross v. Blake*, 578 U.S. 632, 642 (2016).[4]

Although the Magistrate Judge analyzed, correctly, the unavailability of administrative remedies issue in some depth, some additional discussion is warranted based on Grant's objections and the circumstances of this case.  To start, Grant correctly observes that GDC SOP 209.06 only requires counselors to conduct monitoring visits in administrative segregation units once a week, and HSP Grievance Coordinator Rashedah Mitchell and Defendant Ivey testified that counselors are the only prison staff authorized to accept grievances at HSP under normal circumstances.  Docs. 147 at 3; 140 at 26:1-15; 77:14-20.  Thus, within a ten-day period and assuming minimal compliance with GDC policy, a counselor would visit the administrative

---

[3] Nevertheless, Grant briefly argues that weekends and holidays are not "calendar days."  Doc. 147 at 2-3.  Common sense, and just as importantly, the SOP refute that argument: "Calendar Day is considered a 24-hour time period from midnight to midnight Monday through Sunday."  Doc. 99-3 at 3.  "Calendar days" means calendar days, not business days.

[4] Under *Ross*, administrative remedies are unavailable if they (1) operate as a dead end, (2) are too opaque to use, or (3) are thwarted by prison officials through misrepresentation or intimidation. 578 U.S. at 643-44.  Once the defendants show an administrative remedy is generally available, the burden shifts to the plaintiff to demonstrate that the grievance procedure was subjectively and objectively unavailable to him.  *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020).

segregation unit at least once, and that visit would give an inmate his opportunity to timely file a grievance. The record reflects that is what happened here.

In his response to the defendants' motion for judgment on the pleadings, Grant stated in a sworn declaration that "[u]pon [] return to [HSP] on November 12, 2020, I was immediately placed in J Building for quarantine and later moved to G Building under false claims of a pending disciplinary investigation." Doc. 106-1 at 5 (citing Doc. 101-13). Grant's movement history confirms that after returning from the hospital Grant was housed in J Building on November 12, 2020, and then moved to G Building on November 19, 2020. Doc. 101-13 at 2. Both are administrative segregation units. Doc. 123 at 3 n. 1. According to a Performance Recording Sheet—essentially a log of inmate contact—and testimony at the evidentiary hearing, a counselor visited Grant on November 19, 2020, and November 24, 2020, the date Grant filed his grievance.[5] Doc. 123-4 at 2. No other counselor visits were recorded. *Id*. Grant does not dispute that a counselor visited him on November 19, 2020. Doc. 147 at 4.

Because the Performance Recording Sheet and the testimony of the HSP Grievance Coordinator and Defendant Ivey provided evidence that the grievance process was available to Grant while he was in administrative segregation (Doc. 140 at 7-12), "the burden of going forward shift[ed] to [Grant]" to "demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (internal quotation marks

---

[5] At the evidentiary hearing, Defendant Ivey testified that counselors sign the performance recording sheet in blue ink, as opposed to security staff members or medical personnel who sign in a different color ink. Doc. 140 at 65:5-13. Pursuant to GDC SOP 209.06, each person who visits the administrative segregation unit must record their visit in a logbook. The November 19, 2020 and November 24, 2020 counselor entries were made in blue ink. Doc. 123-4 at 2.

omitted) (citing *Turner v. Burnside,* 541 F.3d 1077, 1085 (11th Cir. 2008)). He failed to meet that burden.

As noted, the Court agrees with the Magistrate Judge that Grant did "not present[] any specific evidence about his efforts to file a timely grievance in the period between his return from the hospital on November 12, 2020, and the ten-day deadline for filing a grievance on November 22, 2020." Doc. 146 at 17. In other words, despite the opportunity to testify and present evidence at the hearing on the defendants' motion for judgment on the pleadings, Grant did not explain or otherwise show that the administrative process was incapable of use during the relevant timeframe. Rather, the evidence reflects that Grant was visited by a counselor who could receive his grievance on November 19, 2020, within the ten-day window after Grant returned from the hospital. Doc. 123-4 at 2. Even in his objections, Grant agrees that the Performance Recording Sheet shows that he was visited on November 19, 2020, and November 24, 2020, but maintains, somewhat ambiguously, "[t]here is no evidence that a grievance could have been submitted before then." Doc. 147 at 4. But Grant did not attempt to explain why he was able to file a grievance on November 24, 2020, but not on November 19, 2020.

Grant makes several broader arguments about the unavailability of the administrative process. He contends that because his grievance was first denied on the merits then rejected on appeal as untimely, "the grievance system is a procedural dead end, not a functioning remedy."[6] Doc. 147 at 4-5 (citing *Ross,* 578 U.S. at 643-44). He

---

[6] Grant relatedly argues that the initial denial of his grievance on the merits precludes a finding that the grievance was untimely. Doc. 147 at 2; 4. The Magistrate Judge considered and properly rejected this argument. *See* Doc. 146 at 13 n. 7 ("[A] prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative

-7-

also points to later-filed grievances he submitted at HSP and other prisons following his transfer from HSP in 2021, the vast majority of which were denied.  *Id*.; *see* Docs. 101-10; 101-13.  These "dead end" allegations are unavailing.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," and the Eleventh Circuit has made clear that even when an administrative process appears futile, exhaustion is still required under the PLRA.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006); *see Varner v. Shepard*, 11 F.4th 1252, 1264 (11th Cir. 2021) (citing *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000)).

      Grant raises several general challenges to the Magistrate Judge's factual findings.  Although Grant acknowledges that the Magistrate Judge "painstakingly reviewed every piece of evidence," he argues that she did not "fairly incorporate or weigh much of the evidence in the exhaustion analysis, or in its credibility determinations," relied on impeached testimony from the evidentiary hearing, and "discredited" documentary evidence he provided, including his personal notebook.  Doc. 147 at 6, 8, 15.  First, the Court notes that none of the "inconsistencies" Grant points to in Grievance Coordinator Mitchell or Defendant Ivey's testimony were determinative in the Magistrate Judge's factual findings on exhaustion.  *Id*. at 6-7; *see* Doc. 146 at 9-20.  Second, the Magistrate Judge properly declined to "incorporate or weigh much of the [documentary] evidence in the exhaustion analysis" because it was largely irrelevant to the exhaustion issue.  Docs. 146 at 17 n. 9; 147 at 15.  Finally, the Court has reviewed Grant's documentary evidence, and all of the Magistrate Judge's factual findings are

---

review.") (citing *Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018)).  Here, the Central Office ultimately rejected Grant's grievance as untimely and the procedural defect was not waived.

clearly supported by the record.  In any event, the Magistrate Judge, as the factfinder, was entitled to weigh the evidence.

Grant also argues that "[t]he record reflects a consistent pattern of bias by the Magistrate Judge that has materially affected the integrity of these proceedings and requires disqualification under 28 U.S.C. § 455(a)."  Doc. 147 at 9, 14.  He points to the Magistrate Judge "[r]outinely granting" defendants' requests for extensions, "disregarding Plaintiff's credible, corroborated evidence," "[i]gnoring or delaying rulings on Plaintiff's critical motions," and "[t]olerating undisclosed ex parte communications between the Court and Defendants, which prejudiced Plaintiff and tainted the impartiality of the proceedings."[7]  *Id*. at 9, 11, 14.

Pursuant to the federal recusal statute on which Grant relies, "[a]ny … magistrate [magistrate judge] of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned."  28 U.S.C. § 455(a) (second alteration in original).  "The inquiry of whether a judge's impartiality might reasonably be questioned under § 455(a) is an objective standard designed to promote the public's confidence in the impartiality and integrity of the judicial process.  *In re Evergreen Sec., Ltd*., 570 F.3d 1257, 1263 (11th Cir. 2009) (quoting *Davis v. Jones*, 506 F.3d 1325, 1332 n.12 (11th Cir. 2007)).  A judge's rulings in the same or a related case ordinarily may not serve as the basis for a recusal motion.  *McWhorter v. Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) (citing *Jaffe v. Grant*, 793 F.2d 1182, 1189 (11th Cir. 1986),

---

[7] The "undisclosed ex parte communications" to which Grant refers is a single document defendants filed ex parte on the docket containing the current address of Alexander Garvin.  Doc. 73.  The Magistrate Judge had previously ordered defendants to file Mr. Garvin's information "restricted to case parties" (Doc. 66 at 2), but defendants filed the document ex parte.  After Grant filed a motion for disclosure of the ex parte communication (Doc. 74), the document was provided to Grant with Mr. Garvin's address redacted.  Docs. 80 at 2; 81.

*cert. denied*, 480 U.S. 931 (1987)).  Unless the movant demonstrates "pervasive bias and prejudice," the judge's bias must be personal and extrajudicial, meaning it must stem from something other than that which the judge learned by participating in the case.  *Id*.  Grant's allegations of bias are based exclusively on the substance and timing of the Magistrate Judge's rulings in this case.  Thus, Grant's bias allegations are judicial, and the Court, upon review of the record, concludes that the Magistrate Judge's rulings do not reflect pervasive bias and prejudice against Grant, or anything close to it.

Next, Grant maintains that the Magistrate Judge improperly ignored his pre-incident grievances and other forms of notice outside the grievance process, such as letters, phone calls, and in-person conversations with the defendants which made them aware of the substantial risk of serious harm he faced.  Doc. 147 at 8-9.  But the Magistrate Judge properly determined that Grant's claim that he filed the pre-incident grievances was not credible, and the Court agrees with these credibility determinations.  Doc. 146 at 15.  The Magistrate Judge likewise squarely addressed and correctly resolved Grant's contentions about defendants' notice and knowledge of the risk, observing that "'[a]n inmate [still] must use all steps in the administrative process and comply with any administrative deadlines and other critical procedural rules before exhaustion is proper.'"  *Id.* at 22 (quoting *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009)).

Grant also maintains that the Magistrate Judge improperly failed to consider *Perttu v. Richards*, 605 U.S. 460 (2025), claiming that *Perttu* "reaffirmed that when a prisoner plausibly alleges that administrative remedies were unavailable, due to intimidation, misinformation, or obstruction[,] exhaustion becomes a factual question

that must be decided by a jury, not the court." Doc. 147 at 3. But Grant misstates *Perttu*'s holding and applicability to this case. *See Perttu,* 406 U.S. at 468 (holding that "parties have a right to a jury trial on PLRA exhaustion when that issue is *intertwined* with the merits of a claim that falls under the Seventh Amendment") (emphasis added). Grant did not argue or present evidence at the evidentiary hearing that when he returned from the hospital, his injuries prevented him from filing a grievance. And as the Magistrate Judge correctly determined,

> Plaintiff's assertion that his administrative remedies were rendered unavailable due to his medical condition is unconvincing. According to the hospital discharge report, Plaintiff was instructed to alternate Ibuprofen and Tylenol for pain. Mitchell Attach. 2, at 8. There was no mention of other medication, including for an infection. *Id.* Moreover, according to a witness statement, Plaintiff was seen by a doctor on November 17, 2020, and no signs of infection were noted. *Id.* at 24. And again, Plaintiff has not presented any testimony or other evidence specifically explaining how his physical or medical condition prevented him from timely filing a grievance.

Doc. 146 at 18-19. Thus, the exhaustion issue in this case, as framed by Grant, is not intertwined with the merits of his underlying deliberate indifference to safety/failure to protect claim. Doc. 147 at 3.

Grant further argues that the defendants' alleged spoliation of evidence from the stabbing incident,[8] as well as their "discovery obstruction and disregard of court orders"[9] support a finding that the grievance process was "riddled with obstruction [] and fraud."

---

[8] *See* Docs. 49-16 at 4; 88 at 1 ("Whether additional items Plaintiff requested—such as security footage and log books—existed at one time and were subsequently destroyed is a matter the Court will address in response to Plaintiff's pending motion for default judgment for spoliation of evidence.").

[9] *See, e.g.,* Doc. 116 at 1 (granting Grant's motion to compel and noting that "[t]his case has suffered numerous and extensive delays, mostly attributable to Defendants' failure to fully and timely respond to Plaintiff's discovery requests.").

Doc. 147 at 6-7. And Grant claims that his ongoing litigation in the Northern District of Georgia bolsters his contention that the grievance process was unavailable to him. *Id*.; *see Grant v. Oliver*, 4:23-cv-207-WMR-WEJ (N.D. Ga. Oct. 11, 2024). Even taking Grant's allegations of spoliation and failure to comply with court orders as true, the allegedly spoliated evidence is unrelated to the issue of exhaustion and the availability of administrative remedies.[10] And Grant's allegations of constitutional violations and grievance obstruction in other prisons have no bearing on this case.[11] This is because, as the Court has explained, once the defendants met their burden of showing a generally available administrative remedy, the burden shifted to Grant to demonstrate that the grievance procedure was "subjectively and objectively unavailable to him." *Geter*, 974 F.3d at 1356. As discussed, Grant failed to meet his burden, and the Court affirms the Magistrate Judge's finding that administrative remedies were available to Grant.[12]

Finally, Grant notes the "unaddressed" sanctions issue and his motion for default judgment. Doc. 147 at 10-11. In that motion, Grant argues the defendants failed to comply with discovery orders and to preserve electronically stored information. Doc. 71

---

[10] Grant's wide-ranging objection and the voluminous record notwithstanding, the issue here is narrow—did Grant timely file his grievance, and if he didn't, why didn't he? Again, the Magistrate Judge neatly summarized the evidence, or lack of evidence, of what happened during that critical ten-day period. Doc. 146 at 17-19. No claimed spoliation tainted that evidence.

[11] In *Grant v. Oliver*, 4:23-cv-207-WMR-WEJ (N.D. Ga. Oct. 11, 2024), the district court determined that Grant's complaint alleging retaliatory transfer and violation of due process was not subject to dismissal on screening. Docs. 8; 16. As alleged, these claims arise from Grant's transfer from Johnson State Prison to Hays State Prison, and do not involve HSP. ECF No. 1 at 10-11.

[12] Notwithstanding this conclusion, Grant has maintained throughout the course of this litigation that he was placed in administrative segregation after he returned from the hospital based on false disciplinary reports. *See, e.g.,* Doc. 106 at 5. While such allegations are relevant to the first and third *Ross* exceptions, there is still no evidence supporting a finding that Grant's placement in administrative segregation rendered the grievance process unavailable to him. *Ross,* 578 U.S. at 643-44.

at 2-4. The Magistrate Judge recommended denying Grant's motion for default judgment as moot due to her Recommendation that the defendants' motion for judgment on the pleadings be granted. Doc. 146 at 23 n.13. To the extent Grant objects to the defendants raising exhaustion at this late stage in the proceedings, the Court shares his frustration. Nonetheless, the defendants' motion is proper. The motion was timely filed, the defendants preserved the exhaustion defense in their answer, and the defendants had not previously filed a motion under Rule 12. Docs. 29; 146 at 21. *See Brooks v. Warden*, 706 F. App'x 965, 968 (11th Cir. 2017) ("[A] defendant must raise the exhaustion defense in his first Rule 12 motion, otherwise the defense is forfeited and cannot be raised in a later motion under Rule 12.").

      The Court has reviewed the parties' briefing (Docs. 71; 83; 85) and determined that even taking all Grant's spoliation allegations as true and considering the defendants' apparent discovery missteps in this case, the Court would not enter default judgment as a sanction. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi), (e)(2)(C); *NHL v. Metro. Hockey Club*, 427 U.S. 639, 641-42 (1976) (explaining that district courts must weigh sanctions in light of the full record in the case). Now, to be clear, the defendants' insistence that "no footage, incident report, or logbook" exists for the stabbing incident (Doc. 83 at 2), in apparent violation of GDC SOP 204.11's requirement that video recordings must be stored and retained for three years, undoubtedly raises spoliation concerns. The GDC's failure to preserve evidence has long been a problem, leading the Court to order counsel for Department defendants to preserve evidence and document their preservation efforts. *See, e.g., Bostic v. Georgia Dep't of Corrections,* No. 5:24-cv-406-MTT, ECF No. 41 (M.D. Ga. July 1, 2025). But again, these

allegations do not impact the Court's exhaustion analysis. Thus, even assuming spoliation occurred with bad-faith intent, the Court would decline to impose the severe default judgment sanction here where, based on the PLRA's exhaustion requirement, the merits of the case would otherwise not be considered. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (internal citations omitted). And with respect to the defendants' failure to fully comply with court orders, the Magistrate Judge confirmed in her order on Grant's motion to compel that "the Court is satisfied that all responsive, relevant evidence that *now* exists has—with the exception of one item discussed below—been produced." Doc. 88 at 1. Grant's motion for default judgment based on alleged spoliation and discovery abuses (Doc. 71) is **DENIED**.

After review, the Court accepts and adopts the findings, conclusions, and recommendations of the Magistrate Judge. The Recommendation (Doc. 146) is **ADOPTED** as stated in this Order. Accordingly, the defendants' motion for judgment on the pleadings (Doc. 99) is **GRANTED**, Grant's motion for default judgment based on alleged spoliation and failure to comply with court orders (Doc. 71) is **DENIED,** and Grant's complaint is **DISMISSED without prejudice**.[13]

**SO ORDERED**, this 27th day of August, 2025.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT

---

[13] Per the Recommendation, Grant's motions for preliminary injunction (Docs. 86, 144), for judicial notice (Doc. 87), to expedite ruling (Doc. 89), for summary judgment (Doc. 103), and to compel mediation (Docs. 114, 119), and Defendants' motion for summary judgment (Doc. 101) are **DENIED AS MOOT**. Doc. 146 at 23 n. 13. Grant's second motion to expedite ruling (Doc. 148) is **TERMINATED AS MOOT**.